[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE
The plaintiffs, Milton Eulau and Mark Heming, are two of the trustees under the Josephine H. Borg Revocable Trust Indenture. See Complaint at Paragraph 1. They brought this action by a two count complaint dated August 2, 1990, seeking damages and attorney's fees resulting from a payment they made to the defendant, Charter House Realty, which plaintiffs claim was improperly received by defendant. The underlying facts of this dispute are alleged in the complaint as follows: In count one plaintiff alleges that the defendant real estate agency obtained a listing agreement on or about June 25, 1986, pursuant to which the defendant was to sell certain property on behalf of the trust which was the owner of the premises. Plaintiffs claim that they never signed a listing agreement or extension of a listing agreement, but that only one of the trustees at the time, a Walter T. Sullivan, signed the listing agreement and all subsequent extensions. Plaintiffs claim that CT Page 5 they never executed any documents authorizing Walter T. Sullivan to sign the listing agreement in the manner provided for conveyance under Conn. Gen. Stat. 47-5.
Plaintiffs claim that the purported listing agreement was invalid under Conn. Gen. Stat. 20-325a, since that statute requires that each of the owners of the real estate must sign the listing agreement or be authorized to sign as provided in subsection 5 of said statute. Plaintiffs claim to have paid $18,000 to defendant pursuant to its demand when the premises were sold, and claim that such payment was improperly received in contravention of the law of the State of Connecticut and in violation of public policy.
The second count of plaintiffs' complaint claims that defendant's conduct amounts to an unfair trade practice, in violation of the Connecticut Unfair Practices Act ("CUTPA").
The defendant filed a motion to strike dated September 12, 1990, accompanied by a supporting memorandum of law. The defendant argues that both counts of plaintiffs' complaint should be stricken because: (1) the plaintiffs cannot maintain an action pursuant to Connecticut General Statutes 20-325a; and (2) Section 20-325a is the exclusive statutory basis for challenging the technical requirements for listing agreements. Defendant claims that Conn. Gen. Stat. 20-325a applies only to brokers and limits actions brought under it to those brought by licensed brokers, thereby precluding plaintiffs from a cause of action. Defendant adds that plaintiffs cannot try to enforce the requirements imposed by Conn. Gen. Stat. 20-325a Pursuant to any other statute; it claims that the issue of whether the technical requirements for listing agreements have been met is an issue which can be challenged only under 2-325a.
Plaintiffs filed an opposing memorandum dated September 26, 1990, in which they argue that the legislature adopted20-325 (A) and (b) in order to safeguard the public against improper actions by real estate brokers.
Plaintiffs claim that one who has, as a result of the violation of such statute, suffered such injury as the statute is designed to guard against, has good ground for recovery. Plaintiffs rely on Conaway v. Prestia, 191 Conn. 484 (1983), for the concept that violations of statutes such as the instant one are violations of CUTPA per se, and that, accordingly, recovery should be allowed.
"The purpose of a motion to strike is to `contest. . .the legal sufficiency of the allegations of any complaint. . .to state a claim upon which relief can be granted.'" Gordon v. CT Page 6 Bridgeport Housing Authority, 208 Conn. 161, 170 (1988); Conn. Practice Bk. 152. "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." Gordon,208 Conn. at 170. "The court must construe the facts in the complaint most favorably to the plaintiff." Id. at 170. "Each motion to strike must be accompanied by an appropriate memorandum of law citing the legal authorities upon which the motion relies." Conn. Practice Bk. 155.
Our Supreme Court has found that listing contracts are governed exclusively by Conn. Gen. Stat. 20-325a. Conn. Gen. Stat. 20-325a provides in pertinent part:
Sec. 20-325a. Actions to recover commissions arising out of real estate transactions. . . .
 (b) No person, licensed under the provisions of this chapter, shall commence or bring any action in respect of any acts done or services rendered after October 1, 1971, as set forth in subsection (a), unless such acts or services were rendered pursuant to a contract or authorization from the person for whom such acts were done or services rendered. To satisfy the requirements of this subsection any such contract or authorization shall (1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the owner or an agent authorized to act on behalf of the owner only by a written document execute in the manner provided for conveyances in section 47-5, and by the real estate broker or his authorized agent.
Thus far this statute has been interpreted as only applying to cases in which a broker is seeking to recover a commission from the owner or seller of the property under the listing contract. See Cushman Wakefield of Connecticut, Inc. v. Weston Group, Inc., 2 CSCR 339, 340 (February 17, 1987, Cioffi, J.) It has been explicitly held not to apply to: sales contracts between the broker and the salesman and the real estate agency, Holmes v. Prefered Properties, Inc., 190 Conn. 808
(1983); arrangements for commissions between co-workers, Dow Condon v. Anderson, 12 Conn. L. Trib. 23, p. 32 (May 5, 1986, Satter, J.); and agreements that the buyer is to pay the broker's commission, Purtill v. Monaco, 12 Conn. L. Trib. 6, p. 24 (August 22, 1985, Shaughnessy, J.).
The defendant argues in its memorandum that plaintiffs have no cause of action under Conn. Gen. Stat. 20-325a to CT Page 7 recover a commission from a broker. However, the allegations of plaintiffs' complaint do not lead this court to consider whether Conn. Gen. Stat. 20-325a creates a cause of action against a broker. The plaintiffs have attempted to set forth their claim in the following pertinent paragraphs.
In paragraph 6 of the complaint, plaintiffs allege that "[t]he purported Listing Agreement was invalid under the provision of 20-325a of the Connecticut General Statutes since that statute requires that each of the owners of the real estate must sign the listing agreement or be authorized to sign as provided in sub-section 5 of said statute."
In paragraph 7 of the complaint, plaintiffs allege that "[t]he Plaintiff paid to the Defendant the sum of Eighteen thousand ($18,000) Dollars as a result of the Defendant's demand therefor at the time the premises were sold."
In paragraph 8 of the complaint, plaintiffs allege that "[s]uch payment was improperly received by the Defendant in contravention of the law of the State of Connecticut and in violation of the public policy of the State of Connecticut."
"Each pleading shall contain a plain and concise statement of the material facts on which the pleader relies. . . ." Conn. Practice Bk. 108. "The rules of pleading `are designed to clarify and fix the issues and to confine the judicial inquiry necessary to decide the issues within reasonable and relevant limits.'" Pero Building Co. v. Smith, 16 Conn. App. 71, 74
(1988).
The plaintiffs have to plead sufficient facts to allege a cause of action upon which relief can be granted. Plaintiffs do not allege a cause of action under Conn. Gen. Stat. 20-325a nor do they allege facts which apprise the court of what cause of action they are pleading, or even how the plaintiffs claim to be damaged. The first count of plaintiffs' complaint is stricken.
The second count alleges that the defendant's conduct as discussed in count one is an unfair trade practice under the Connecticut Unfair Trade Practices Act 42-110a et seq.
Under Connecticut's Unfair Trade Practices Act (CUTPA), no Persons shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. Conn. Gen. Stat. 42-110b(a) (rev'd to 1987).
 Connecticut has expressly adopted some federal guidelines to determine whether a practice violates CUTPA: CT Page 8
 (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of, unfairness, (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumer [(competitors or other businessmen)].
Conway v. Prestia, 191 Conn. 484, 490-91 (1983) (quoting FTC v. Sperry Hutchinson Co., 405 U.S. 233, 244 n. 8 (1972)).
All three criteria need not be satisfied to support a finding of unfairness and a practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser degree it meets all three. Atlantic Richfield Co. v. Canaan Oil Co., 202 Conn. 234, 242 (1987).
Section 42-110g(a) Provides that "[a]ny person who suffers any ascertainable loss. . .as a result of the use or employment of a method, act or practice. . .may bring an action. . . ." "Under CUTPA, there is no need to allege or prove the amount of the ascertainable loss." Hinchliffe v. American Motors Corp.,184 Conn. 607, 614 (1981).
The second count of the complaint contains the identical allegations of count one, and adds that the defendant's conduct is an unfair trade practice under the Connecticut Unfair Trade Practices Act 42-110a et seq. The plaintiffs claim that they have suffered damages as a result of the defendant's actions.
While an act which results in the creation of an invalid listing agreement may be a violation of CUTP the plaintiffs have failed to allege specifically what the unfair, deceptive, or immoral acts of the defendant were in this case. Plaintiffs allege that the defendant obtained a listing agreement signed by only one of three trustee owners of the property to be sold; that the agreement was invalid; and that the commission paid by the plaintiffs was improperly received by the defendant. Plaintiffs have not alleged facts which show how this conduct constitutes a CUTPA violation and therefore, the second count is stricken.
CIOFFI, J. CT Page 9